## BLAKEMORE, MAYO & Co. v. HEYMAN.

*(Circuit Court, D. Kentucky. April 5, 1881.)*

1. COMMERCIAL USAGE—GENERAL LAW.

In order to have a commercial usage take the place of the general law, it must be so uniformly acquiesced in, and for such a length of time, that the jury will feel themselves constrained to find that it entered into the minds of the parties and formed a part of the contract.

*Lyons* v. *Culbertson*, 83 Ill. 37.

2. SAME—NEW YORK COTTON EXCHANGE.

Therefore, the laws, rules, and regulations which govern the members of the New York cotton exchange can have no effect upon the legal rights of a party to a contract, who did not know of or acquiesce in the same.—[ED.

*Henry Burnett,* for plaintiffs.

*Gilbert, McGonagill & Reed,* for defendant.

BARR, D. J.    This is a suit to recover a balance of $687.19, which plaintiffs alleged they paid for defendant at his instance and request.    Plaintiffs are commission merchants, doing business in New York, and are members of the cotton exchange of that city.    They deal in produce on commission.    Defendant is a dry goods merchant, doing business in Henderson, Kentucky.    Plaintiffs bought on the cotton exchange, New York, for defendant, 100 bales of cotton, to be delivered February, 1879.    This contract matured, and they say they closed it out according to the rules and regulations of the cotton exchange, and there was a loss of $44.75.    They, at the request of defendant, sold March 24, 1879, for his account, 100 bales of cotton, June delivery.    They sold March 26, 1879, upon like request and account, 100 bales of cotton, July delivery.    These sales were made on the cotton exchange, and at the prevailing rates.    Plaintiffs then had in hand as margin $660, less the $44.75 loss on the purchase of 100 bales of cotton for February delivery.

The market advanced, and plaintiffs demanded of defendant additional margin, and he sent them, April 1, 1879, $75, and promised, April 3, 1879, to send them $300 more, but failed to do so.    The plaintiffs, on the fifteenth of April,

1879, covered these outstanding contracts by the purchase, from two members of the cotton exchange, of the same amount of cotton, and same delivery, June and July. The cotton thus purchased cost more than the price for which the cotton was sold in March. The difference was settled as of the fifteenth of April, and the contracts which were entered into April 15th substituted for the March contracts, and thus the transaction was closed, and plaintiffs released from any further liability. The loss on the contract for the June delivery was $679.25, and on the contract for the July delivery was $578.25. These sums, together with the plaintiffs' commission, after deducting the margin in their hands, made the balance of $687.19 sued for.

The defendant admits the employment of plaintiffs and the sending of the margins to them, but puts in issue every other material allegation of the petition. He denies that there was a sale in March of the cotton, as alleged, or that there was a purchase in April. He denies all knowledge of the rules, regulations, or customs of the New York cotton exchange. He also alleges that any contract or contracts which plaintiffs entered into were with the express understanding that only the difference should be paid, and that they were really only wagers upon the rise and fall of the market, and void.

I have carefully read the evidence, and need only consider whether or not plaintiffs had the right to close out the June and July deliveries on the fifteenth of April, because defendant failed to put in their hands the margins required by them of him.

There is no evidence proving or tending to prove that there was a special agreement between the parties which authorized the plaintiffs to close out these contracts in advance of their maturity, because of the failure of defendant to put up margins to cover the fluctuations of the cotton market in New York. This right is sought to be derived from the rules and regulations of the New York cotton exchange, and the custom prevailing in the New York cotton market. All knowledge or notice of the rules and regulations of the New York cotton

exchange is denied by defendant, and he reiterates these denials in his testimony.

The plaintiffs have failed to prove defendant's knowledge of these rules and regulations, or that he agreed to be bound by them in his dealings with plaintiffs, or that the contract between plaintiffs and defendant was to be controlled or governed by them.

Indeed, there is no affirmative evidence upon this subject other than the fact that the dealings were upon margins, and that defendant seemed to have recognized plaintiffs' right to call for additional margin. But, as far as I can see from the evidence, never at any time has defendant waived his legal rights in the event he failed to put up margin as required by plaintiffs. In the absence of an agreement plaintiffs had no legal right to close out contracts on the fifteenth of April which did not mature until June and July.

The laws, rules, and regulations which govern the members of the New York cotton exchange can have no effect upon defendant's legal rights, as he did not know of or acquiesce in them. If, however, it be conceded that defendant is bound to repay to plaintiffs all losses which they incurred in accordance with the laws and rules governing the New York cotton exchange, I should be disinclined to give judgment in favor of plaintiffs, because it is not shown they were compelled to do what they did. The parties to whom they allege they sold the cotton were Waldo & Dayton, plaintiffs' brokers, and they nowhere prove that Waldo & Dayton required of them more margin than defendant had already furnished them, nor, indeed, that any demand for margin had been made of them, or would be made.

Plaintiffs' call for an additional margin was, as far as this record shows, made for plaintiffs' own protection, and not because margins had been demanded of them.

In regard to a custom in New York outside of the cotton exchange, which Mr. Watts, president of the cotton exchange, attempts to prove, it is sufficient to say that no such custom is pleaded, nor is there any evidence tending to prove defendant's knowledge of it, or that it is a well-known usage

or custom. In order to have "commercial usage take the place of general law it must be so uniformly acquiesced in, and for such a length of time, that the jury will feel themselves constrained to find that it entered into the minds of the parties and formed a part of the contract." *Lyons, etc.,* v. *Culbertson,* 83 Ill. 37.

The plaintiffs have failed to sustain their action, and judgment will be for defendant and his costs expended herein.